SIMON, Justice.
 

 Arkansas Louisiana Gas Company, a Delaware corporation authorized to transact all phases of the natural gas business in the States of Louisiana, Arkansas and Texas, was charged, by way of indictment, with a violation of Act No. 270 of 1918, now Louisiana Statutes Annotated- — -Revised Statutes 30:41^46, known from its origin as the Common Purchaser Law, and was tried and convicted. It was sentenced to pay a fine of $350 and costs.
 

 The defendant has appealed, and in this court its counsel relies on a number of bills of exception for a reversal of the conviction and sentence.
 

 The bill of indictment, as amended, under which defendant was convicted, and with its language, in the interest of clarity, rearranged and condensed charges that on December 1, 1952, Arkansas Louisiana Gas Company was engaged in the business of purchasing and selling natural gas in Louisiana and did violate the Common Purchaser Law and did pay Mrs. Mattie Burnham Clampitt and her lessee, Joe B. White, the sum of approximately $0.05 per thousand cubic feet for gas purchased from the Joe B. White-Delaney Unit Well No. 1 and at
 
 *184
 
 the same time the defendant was paying the Hunt Oil Company, the Stanolind Oil Company, the Ohio Oil Company and J. R. Frankel approximately $0.11 per thousand cubic feet for gas produced from the same reservoir and offset wells in the East Haynesville Field as that from which the Joe B. White-Delaney Unit No. 1 well was producing, and did, therefore, discriminate against the said Mrs. Mattie Burnham Clampitt and Joe B. White in violation of the Act.
 

 The charge of discrimination against defendant is based upon the provisions of contracts entered into between defendant and fifty-one gas producer-sellers. The contract entered into with Joe B. White-Delaney stipulated that defendant would buy gas in its raw state from the Joe B. White-Delaney Unit Well No. 1 at the price of $0.05 per thousand cubic feet during the period of time and under the terms and conditions set forth therein. During the time that defendant was paying the price fixed in said contract, defendant was paying the other named producer-sellers a higher price. The differential in the price which defendant paid to White and that paid to other producer-sellers named in the indictment is the gravamen of the violation chargéd. In other words, the indictment, conviction and sentence is predicated upon the difference in prices paid by defendant to producer-sellers, and which the court below held was a discrimination between producers and, therefore, was a violation of the Common Purchaser Law.
 
 [1]
 

 In the court below, defendant filed a demurrer and a plea attacking the constitutionality of the statute invoked. The pertinent features alleged in the demurrer are that, if the indictment is “construed to charge defendant with paying different prices for gas purchased from persons named therein, such alleged conduct is not denounced by the statute”; that the statute does not prohibit differences in prices paid; that the indictment does not charge defendant with any offense known to or denounced by the criminal laws or statutes of the State of Louisiana, more particularly the Common Purchaser Law. The demurrer further alleges that the indictment as drawn, and under which the prosecution was conducted, did not set forth with legal certainty the nature of the offense so as to enable it to understand with what it was charged and thus prepare a defense thereto, in violation of the Constitution of this State. This demurrer was overruled, to which Bill of Exception No. 1 was .reserved.
 

 Besides others, bills of exception were reserved by defendant to, namely: (1) the ruling of the court below admitting evidence;
 
 [2]
 
 (2) the refusal by the court of
 
 *186
 
 requested charges;
 
 [3]
 
 .'.(3) the overruling of a motion for a new trial;
 
 [4]
 
 and (4) that of a motion in arrest of judgment.
 
 [5]
 
 These bills of exception are based on the same contentions advanced by defendant in its demurrer, and, therefore, as a group, present the identical contentions contained in the demurrer, and which shall be disposed of collectively.
 

 Though there are numerous other bills of exception presented by the record, the view we have taken, as hereinafter expressed, obviates the necessity of considering them.
 

 The statute under which defendant was indicted and prosecuted,
 
 [6]
 
 and particularly the pertinent part of the section
 
 [7]
 
 which deals with the prohibition against discrimination, reads:
 

 “Every person, engaged in the business -of purchasing and selling natural gas in this state, shall be a common purchaser thereof, and shall purchase all of the natural gas which may be offered for sale which may be brought in pipes and connecting lines by the owner or proposed seller to its trunk lines, * * * without discrimination ■ in' favor of one producer as against another, or in favor of any one source of supply as against another save as authorized by the commissioner of conservation after due notice and hear-fog. ^ *[* 5¡í
 

 It is so axiomatic, that citation of authority is unnecessary, that in Louisiana there are no common-law crimes, and that nothing is a crime, no conduct can be held criminal, which is not made so by statute and clearly described by the language of its prohibition. Such statutes are subject to strict interpretation.
 
 [8]
 
 Article 7 of the Louisiana Criminal Code itself states as follows: “A crime is that conduct which is defined as criminal in this Code, or in other acts of the legislature, or in the constitution of this state.” LSA-R.S. 14:7.
 

 It is significant that counsel for the State concedes, as contended by defendant, that the statute says nothing about discrimination in the matter of price, and from a reading of its provisions we are in full accord with that concession. Counsel contends, however, that the words “without discrimination”, when applied to persons engaged in purchasing natural gas from producers, mean that they shall purchase without discrimination in favor of one producer as against another, or in favor of any one source of supply as against another; that as a consequence, unless the words are not applied and are interpreted to mean
 
 *188
 
 the price paid to producers, the prohibitions become meaningless.
 

 The word “discrimination”, that is, the word itself without any context, merely means “The act of treating differently; treating one differently from another”;
 
 [9]
 
 the word “discriminate”, according to Webster, means “to make a difference or distinction”.
 

 It logically follows that every difference is a discrimination. Can we say that every conceivable sort of difference is unlawful and unjust discrimination, and thus a criminal offense, unless there be a specific and clear prohibition by the statute of the particular difference or distinction sought to be declared a crime? We think not. To determine what the Legislature meant by the word “discrimination”, and in construing what the word means, we must apply the ordinary rules of statutory construction and the limitations which may necessarily restrict us in so doing.
 

 Whenever the meaning of a statute appears doubtful, it is well recognized that we should seek the discovery of the legislative intent. It is equally manifest that “where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need of construction”. The doctrine is extended further in that no court should exercise the right of resorting to a construction which has for its purpose the reading into a statute that which the Legislature neither made nor intended to make. Among the best known of our rules of statutory construction is the phrase
 
 “noscitur a sociis”
 
 and
 
 "ejusdem generis”.
 
 The maxim has been defined as follows:
 

 “It is known from its associates. * * * The meaning of a word is or may be known from the accompanying words. * * * Under this rule general and specific words, capable of analogous meaning, when associated together, take color from each other, so that general words are restricted to a sense analogous to less general. * * *»
 
 [10]
 

 We have many times employed this rule in ascertaining the meaning of words such as “illegal” or “immoral” or “unlawful”, which, like “discrimination”, are general words.
 
 [11]
 

 The statute says that a common purchaser (as therein defined) shall purchase
 
 all
 
 of the gas offered for sale without discrimination; it further provides that where a person is unable to purchase
 
 all
 
 of the gas offered, it is the duty of the common purchaser to purchase “ratably” without discrimination, i. e., on a “prorata” basis without discrimination. We cannot
 
 *190
 
 find or discern any prohibition against “price” discrimination, and we cannot read such a prohibition into the statute. It is well settled that the definition or determination of acts which are punishable as crimes is a purely legislative function which cannot be delegated to, or exercised by the courts.
 
 [12]
 
 In the Reese case, the Supreme Court of the United States pointed out: “It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large.” In the case of State v. Vallery, 212 La. 1095, 34 So.2d 329, 331, this Court held:
 

 “Courts can do no more than interpret and construe statutes. They cannot, under the guise of interpretation, assume legislative functions. * * *”
 

 And in the case of State v. Truby, supra, [211 La. 178, 29 So.2d 762] we said:
 

 “It is true, as stated hereinabove, that in the construction of a provision of the Criminal Code the words used therein are to be taken according to their fair import, in their usual sense, in connection with the context, and with reference to the purposes of the provision. However, it is equally true that a penal statute must be strictly construed and cannot be extended to cases not included within the clear import of its language, and that nothing is a crime which is not clearly and unmistakably made a crime. Articles 3 and 7, Louisiana Criminal Code; State v. Breffeihl, 130 La. 904, 58 So. 763, 40 L.R.A.,N.S., 535, and authorities therein cited; State v. Comeaux, 131 La. 930, 60 So. 620.”
 

 It is manifest that the statute was obviously drawn to prohibit discrimination solely in the matter of quantity, to prevent unfair, discriminatory and inequitable abuses in the distribution of natural gas, not as to prices to be paid, but solely to give security to producers in that they would all stand on an equal footing insofar as access to a market through pipeline facilities would be made available. The statute sought to alleviate and prevent the abuses whereby some producers were favored as against others, some afforded markets, others ignored, and, by the process of prorating among producers, assured them that no one would sell more than the other in a given zone.
 

 We conclude that the indictment herein which charges the defendant with acts of unlawful price discrimination fails to charge the defendant with a crime known to or denounced by any law of the State of Louisiana. The conviction and sentence appealed from are annulled, vacated and set aside, and the defendant is discharged-
 

 [1]
 

 . Act No. 270 of 1918, now Louisiana Statutes Annotated — Revised Statutes 80:41 et seq.
 

 [2]
 

 . Bill of Exception No. 6.
 

 [3]
 

 . Bill of Exception No. 12.
 

 [4]
 

 '. Bill of Exception No. 23.
 

 [5]
 

 .Not numbered.
 

 [6]
 

 . Act No. 270 of 1918, LSA-R.S. 30:41-46.
 

 [7]
 

 . LSA-R.S. 30:42-43.
 

 [8]
 

 . State v. Truby, 211 La. 178, 29 So.2d 758, and cases therein cited.
 

 [9]
 

 . 27 C.J.S., p.
 
 140.
 

 [10]
 

 . Black’s Law Dictionary; State v. Truby, supra.
 

 [11]
 

 .State v. Savant,
 
 115
 
 La. 226, 38 So. 974; State v. Truby, supra.
 

 [12]
 

 . United States v. Reese, 92 U.S. 214, 23 L.Ed. 563.