206 So.2d 802 (1968)
In re STATE of Louisiana In the Interest of Pete ELLIOTT, Jr., Sam Elliott, and Donna Elliott, minors.
No. 10923.
Court of Appeal of Louisiana, Second Circuit.
January 11, 1968.
*803 Jones, Blackwell, Chambliss & Hobbs, West Monroe, for appellant.
Horace G. Pepper, Baton Rouge, for appellee.
Before GLADNEY, AYRES, and BOLIN, JJ.
AYRES, Judge.
The respondent, mother of three minors, Pete Elliott, Jr., Sam Elliott, and Donna Elliott, whose ages are 14, 8, and 6 years respectively, prosecutes an appeal from an order assigning the custody of the minors to the Department of Public Welfare.
Respondent complains that the court erred (1) in finding that the evidence was sufficient to deprive her of the care and custody of her minor children, (2) in permitting uncorroborated and unsupported hearsay testimony and the introduction of an ex parte report as a basis for its decision, and (3) in refusing to sustain a motion for a new trial on a basis of newly discovered evidence which could not have been obtained prior to or during the trial.
With respect to the first of the contentions, a primary issue presented for resolution is whether the order, or judgment, complained of was so erroneous and unsupported by the evidence as to warrant a reversal. This is a factual matter requiring for its determination a consideration of the evidence incorporated in the record.
The three children which are the subject of this proceeding were born of the marriage between respondent and Aubrey C. Elliott, from whom respondent was separated and eventually divorced. In the proceedings culminating in a divorce, respondent was awarded the custody of their children and their father was directed to contribute $100 per month for their support. No support whatever was provided by him. The mother has, therefore, been required to support her children. With limited educational advantages and without formal training and experience for any particular vocation, respondent found work as a waitress in a restaurant and lounge where she earns an average weekly wage of approximately $100, composed largely of tips. Her hours of employment were from 6:00 p. m. until 12:00 midnight. The mother had engaged in this employment for approximately two years before the institution of this proceeding. Her days were spent with the children except during school hours; she prepared their meals and provided for their necessities; and except for a brief period prior to institution of this action she provided supervision for the children while she worked. After the older son had attained the age of 13 years, respondent concluded she could safely entrust the other two children to his care while she worked.
The record reflects that on the evening of April 17, 1967, the mother, on departing from her residence to report for work, did leave the children at home, the two younger ones under the supervision of the oldest. This had been her custom since about January 1, 1967. On that occasion, however, Pete Elliott, Jr., neglected his responsibility and left home on a motorcycle for an adventure some two blocks distant. The youngest of the three children went next door to the home of a paternal uncle, Julian C. Elliott. The Elliotts, having planned an outing for the evening, were presented with a situation involving the child's care. Instead of communicating with the child's mother, Elliott contacted his own mother, Mrs. Jewel Elliott, and, between them, a decision was reached to call the police and to notify the juvenile authorities. A call was made to the police and Elliott reported that the minors were left unattended, wandering about the neighborhood without parental supervision. Joe Cummings, a police officer, answered *804 the call. Donna was immediately thereafter taken to the home of Mrs. Jewel Elliott, the paternal grandmother. Pete, Jr., and Sam were soon located at their home, after which they, too, were taken to their grandmother's residence. The mother was informed of these facts by Pete Elliott, Jr., who telephoned her at her place of employment. On seeking her children, respondent was arrested and charged with a misdemeanor consisting of a simple trespass upon the premises of Mrs. Jewel Elliott.
The mother was first deprived of the custody of her children through the unauthorized action of the Department of Public Welfare. She was forced to resort to a habeas corpus proceeding to regain custody of her children. The present proceeding was then instituted against her. The custody of the children was committed to the Department of Public Welfare, who, in turn, placed the minors in Mrs. Jewel Elliott's charge.
Prior to the institution of this proceeding, the children were well adjusted in their school work. Pete Elliott, Jr., was in Junior High School. Sam Elliott's teacher was available as a witness and testified that he was doing commendable work. A minister of a church, a lady herself, and whose church was attended by Mrs. McHenry and her children, expressed the opinion that should there have been any laxity in the mother's responsibilities toward her children she would have known it, and she knew of none.
Respondent's employer testified she was a dependable and honest worker; that he knew nothing reflecting against her conduct or the care of the children. Donald E. Elliott, the paternal grandfather of the children, testified in the mother's behalf and to the effect that the mother was doing a splendid and commendable job with the childrenthat she gave them the care, attention, and affection of a mother. He questioned the good faith and sincerity of not only Mrs. Jewel Elliott but of Julian C. Elliott in initiating this proceeding.
Mrs. Frances Brennan, mother of eight children herself and a long-time friend of respondent, testified, as did Miss Gay Banks, a fellow employee of respondent, to the effect that respondent provided the children with care, attention, and support to the best of her ability.
With reference to respondent's second complaint concerning the introduction into the record of hearsay testimony as well as an ex parte report of a child welfare worker of the Department of Public Welfare as a basis for the court's decision, it may be pointed out that the State relies upon the provisions of LSA-R.S. 13:1579.1 which stipulate:
"In the hearing of all cases under this Part, involving petitions of juvenile delinquency or neglect, all facts connected therewith and all surrounding circumstances, including the environment and history of the child, together with any character of evidence, including hearsay evidence and opinion evidence which the court, in its discretion, may deem proper, may be admissible, and the testimony of the probation officer assigned to the case shall be admissible. Added Acts 1956, No. 106, § 1."
If this section of the statute has the contended effect, then a departure from and an exception is provided in the general rules of evidence which exclude hearsay evidence and opinions as well as unsworn ex parte reports. The introduction of such testimony is clearly unauthorized under the general rules long and well established and recognized in the jurisprudence of this State, for the reason among many others, that the party against whom the evidence is sought to be used is deprived of the right of cross-examination to test and determine the truth of all such statements.
The statute does not, in our opinion, provide for such an exception to the general rules of evidence. In this connection it may be pointed out that the statute provides such "evidence which the court, in its discretion, may deem proper, may be admissible."
*805 In the interpretation of statutes, the word "may" means "permissive." LSA-R.S. 1:3, C.C.P. Art. 5053. The word denotes discretion, in this instance, on the part of the trier of facts, that is, the court. A provision of a statute making admissible in evidence particular characters of supposed proof at the will, whim, or fancy of the court, which it may, at its discretion, in one case admit and in another exclude, establishes, in law, no rule of evidence which can be accorded any force or effect. We therefore conclude that the State's hearsay and opinion evidence as well as the case worker's ex parte report are inadmissible and should have been excluded from the record.
If it could be said that the statute makes admissible in evidence hearsay and opinion evidence and ex parte statements, such exception to the general rules of evidence would itself be abrogated by the decision of the United States Supreme Court in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
In treating the evidence as admissible we are still not of the opinion that such evidence, when considered and given the weight to which it would, in our opinion, be entitled, would result in a preponderance of evidence in the State's favor.
The State, in support of the order depriving respondent of the custody of her children, relies primarily upon the testimony of Mrs. Jewel Elliott, Julian C. Elliott, and Mrs. Wilma Murray, a child welfare worker of the Department of Public Welfare. Mrs. Murray's testimony was almost entirely hearsay as was her report which was submitted to the court. Mrs. Murray did not interview the children's teachers, the family minister, the employees with whom respondent worked, or her close associates. Nor was any attempt made to confirm any of the accusations and insinuations relative to respondent's alleged immoral conduct. Reliance was primarily upon statements of the Elliotts, who were clearly shown by the record to be extremely biased and prejudiced.
A mother has the paramount right to the custody of her children and she should not be deprived of this right without the most solid and substantial reasons. Kieffer v. Heriard, 221 La. 151, 58 So.2d 836 (1952); Byrd v. Byrd, 128 So.2d 794 (La.App., 3d Cir. 1961); Bush v. Bush, 144 So.2d 119 (La.App., 4th Cir. 1962). The burden to establish that a mother, by virtue of her unfitness, should be deprived of the custody of her children is upon those resisting the mother's demands for custody. State ex rel. Paul v. Department of Public Welfare, 170 So.2d 549 (La.App., 3d Cir. 1965).
The deprivation of a mother of her children is indeed a harsh proceeding. The love of a mother for her children is one of the most powerful human emotions, and in custody cases it is a most important factor in determining what is best for their welfare.
A mother is entitled to the custody of her minor children unless it is shown by legal and competent evidence that she is morally, mentally, or otherwise unfit or incapable of caring for them, or that, for some other reason, it would be detrimental to the children's health, safety, or welfare. A mother's love for her children cannot ordinarily be compensated, in considering their welfare, by the greater means or ability of others to provide for them.
The record, in our opinion, sufficiently supports respondent's claim that there has been no neglect of the children such as would justify depriving her of their care and custody.
In view of the decision reached, it is unnecessary to consider the issues presented in respondent's motion for a new trial.
For the reasons assigned, the order or judgment appealed is annulled, avoided, reversed, and set aside; and
It is now Ordered, Adjudged, and Decreed that the care, control, and custody of the minors, Pete Elliott, Jr., Sam Elliott, *806 and Donna Elliott, be, and the same are hereby, restored to their mother, the respondent, Mrs. Nell Elliott McHenry; and that the State of Louisiana, through the Department of Public Welfare, pay all such costs as are assessable against it.
Reversed and rendered.
BOLIN, J., dissents.