244 So.2d 288 (1971)
In re STATE of Louisiana In the Interest of Edward William OGLETREE.
No. 4214.
Court of Appeal of Louisiana, Fourth Circuit.
February 8, 1971.
*289 Jim Garrison, Dist. Atty., Parish of Orleans, William M. Detweiler, Asst. Dist. Atty., Juvenile Division, Orleans Parish, for appellee.
Robert Glass, New Orleans, for appellant.
Before CHASEZ, LEMMON and BARNETTE, JJ.
LEMMON, Judge.
This is an appeal by a juvenile, Edward William Ogletree, from an adjudication of delinquency under LSA-R.S. 13:1570 A(5),[1] by allegedly violating LSA-R.S. 14:95A(1) which in part prohibits the "intentional concealment" of a "dangerous weapon" on one's person.
The essential and uncontroverted facts are that on November 25, 1969, the defendant was seen by one of the arresting officers with a pistol in his waistband. He was arrested, and after hearing on December 18, 1969, was found to be delinquent and committed indefinitely to a state juvenile institution.
*290 While counsel for defendant has raised various arguments in support of reversal of the finding of delinquency, we find it necessary to discuss only one of these issues.
The juvenile was specifically charged[2] as follows:
"* * * to be a delinquent child, R.S. 13:1570A(5), by violating Louisiana Revised Statutes 14:95A(1), relative to illegal carrying of weapons, by intentionally concealing a dangerous weapon on his person, to-wit: a German Mauser 6.55 caliber pistol, about 12:25 a. m., November 25, 1969, in the 400 block of St. Mary Street." (Emphasis added)
For adjudication of delinquency under LSA-R.S. 13:1570A(5) a juvenile must violate a specific statute or ordinance.[3] The statute allegedly violated, according to the charge, prohibits the following:
"The intentional concealment of any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, on one's person; * * *." LSA-R.S. 14:95 A (1).
For the adjudication to be upheld in this case, it must be proved that the juvenile violated the cited statute[4]. This does not leave a court free to find that a juvenile is in some amorphous state known as delinquency because the child's behavior would be considered "delinquent" by the average person on the street. The requirements of proof must be stringent if severe consequences flow from a finding of delinquency based on this proof. A juvenile should not be subjected to possibility of institutional confinement on proof insufficient to convict him if he were an adult. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

ILLEGAL CARRYING OF WEAPONS
From the foregoing discussion a finding of delinquency must be based on proof of violation of the statute included in the charge. Therefore, the narrow issue in this case is whether the weapon was concealed within the meaning of LSA-R.S. 14:95 A (1), when the weapon was in defendant's waistband and partially hidden from view and partially in plain and open view.
LSA-R.S. 14:3, which states the method for interpretation of criminal statutes, must initially be consulted.[5] It provides for a "genuine" construction, a concept which had its roots in Edward Livingston's proposed criminal code and was favored for the Louisiana Criminal Code of 1942. However, subsequent jurisprudence has followed a rule of strict construction. See 20 La.Law Rev. 600, 602-603 (1960); LSA-R.S. 14:3 Reporter's Comment.
Under a theory of strict construction a penal statute must be construed *291 in favor of the accused and is not to be extended by implication to cover acts not expressly provided for in the statute. It is not the function of the courts to define undesirable or anti-social conduct according to the needs, mores, or vagaries of the times. This is the function of the Legislature. State v. Gonzales, 241 La. 619, 129 So.2d 796 (1961); State v. Penniman, 224 La. 95, 68 So.2d 770 (1953); State v. Arkansas La. Gas Co., 227 La. 179, 78 So.2d 825 (1955); State v. Truby, 211 La. 178, 29 So.2d 758 (1947); State v. Daniels, 236 La. 998, 109 So.2d 896 (1959).
The only previous judicial interpretations of "concealment" of weapons are two vintage cases, State v. Smith, 11 La.Ann. 633 (1856), and State v. Bias, 37 La.Ann. 259 (1885).
In State v. Smith, supra, the court referred to a second statute which defined concealed as not appearing in "full open view". Smith, 11 La.Ann. at 634. And in State v. Bias, supra, the court distinguished between the "statutory" and "common" meanings of concealed and followed the Smith decision:
"In common parlance and even in philological import a thing concealed is a thing hidden, and therefore one might be correct in saying if it is not hidden or is visible, then it is not concealed. But the word must be taken in its statutory sense. * * *" Bias, 37 La.Ann. at 360.
We make no distinctions between any statutory and common meanings of the term "concealment". Under a strict interpretation or even by a "genuine" construction, concealment can only require that the object be fully hidden from view[6]. In this case it was not. We therefore must reverse defendant's adjudication of delinquency.
This holding is in accord with the well established due process principle that a penal statute must clearly indicate what conduct it forbids or requires.[7]
"It is the statute * * * that prescribes the rule to govern conduct and warns against transgression * * * No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939).
A logical conclusion from this principle is that, if a statute must clearly define conduct which will be punished, a person must be able to rely on the common or usual meaning of the language of the statute, which in this case forbids concealment of a dangerous weapon rather than the carrying of a dangerous weapon which is partially in open view. See State v. Davis, note 6, supra.
While we in no way condone the conduct described in the record, the specific charge against the juvenile in this case was simply not proved. We also emphasize that we disapprove of the juvenile court system becoming a criminal court for young persons. However, despite the beneficent aims of this special system, there has been a demonstrable need for procedural and substantive safeguards since the end result can be the deprivation of a child's liberty for an indefinite period of time. LSA-R.S. *292 13:1589[8]. We favor the concept of individual and beneficial disposition for juvenile delinquents, which we believe will reach the true goals of the parens patriae concept.
For the foregoing reasons, the adjudication of delinquency and order of commitment are reversed, the appellant discharged, and the petition of the State in the interest of appellant dismissed.
Annulled, appellant discharged, petition dismissed.
NOTES
[1] The juvenile courts have jurisdiction over all juveniles who come within the purvue of LSA-R.S. 13:1570A(5) which reads in part as follows: "Who violates any law or ordinance, except a child charged with having committed a capital crime or a crime defined by any law defining attempted aggravated rape after having become fifteen years of age. However, the court shall have exclusive original jurisdiction concerning any child who violates any law or ordinance except a child fifteen years of age or older charged with a capital crime or assault with intent to commit aggravated rape." (Emphasis added)
[2] This is in accord with In re Gault, 387 U.S. 1, 34, 87 S.Ct. 1428, 1447, 18 L.Ed. 2d 527 (1967) which requires notice to the juvenile of the "specific issues" which he must meet. See also 28 La.Law Rev. 492, 495 (1968).
[3] Footnote 1, supra.
[4] In In re Glassberg, 230 La. 396, 88 So. 2d 707 (1956), the juvenile was charged with aggravated battery under LSA-R.S. 14:34; however, the court found on appeal that not all the elements of the crime had been proved and reversed the adjudication of delinquency. While not necessary for our holding, which does not rest on the weighing of facts, it should be noted that every element must be proved beyond a reasonable doubt, where "a juvenile is charged with an act which would constitute a crime if committed by an adult." In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 1970, 25 L.Ed.2d 368 (1970).
[5] LSA-R.S. 14:3 reads as follows: "The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." (Emphasis added)
[6] In State v. Davis, 214 La. 885, 39 So.2d 164, 165 (1949) the court commented in a dictum that "* * * the gravamen of the offense is the concealment on one's person of an instrumentality customarily used as a dangerous weapon, and not the carrying of an instrument which might be so used." (Emphasis added)
[7] See also Connally v. General Construction Company, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); Wright v. State of Georgia, 373 U.S. 284, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963); State v. Robertson, 241 La. 249, 128 So.2d 646 (1961).
[8] See Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).