295 So.2d 473 (1974)
STATE of Louisiana In the Interest of James L. SIMON.
No. 4652.
Court of Appeal of Louisiana, Third Circuit.
May 23, 1974.
Rehearing Denied June 13, 1974.
*474 Louis B. Guidry, Lake Charles, for defendant-appellant.
Bernard Marcantel, Dist. Atty., Jennings, for plaintiff-appellee.
Before FRUGÉ, HOOD and WATSON, JJ.
WATSON, Judge.
This is an appeal from the judgment of a juvenile court, appellate jurisdiction being vested in this court by Article 7, Section 29 of the Louisiana Constitution of 1921, as amended.
Following a hearing in the juvenile court, the appellant was committed to the Department of Corrections, State of Louisiana, under a judgment which reads as follows:
"It is therefore ordered, adjudged and decreed that James Lynell Simon, a minor born the 23rd day of September, 1959, is adjudged a child who has committed an offense not classified as criminal but who is in need of supervision, care and rehabilitation and is committed to the care of the Department of Corrections, State of Louisiana, for an indefinite period not to exceed his majority." (Tr. 5).
On appeal, counsel for the appellant contends that the juvenile court erred in committing appellant. The specific argument is that, when the state failed to establish that appellant had violated the specific statute with which he was charged, the juvenile court made the commitment on another ground, as stated in the judgment quoted above.
A juvenile proceeding is initiated by the filing of a petition under LSA-R.S. 13:1574. This statute outlines the methods by which juvenile proceedings are commenced and provides for the contents of the petition, including the following requirements:
C. The petition shall set forth with specificity:
1. The facts which bring the child within the provisions of this chapter, together with a statement, when delinquency is alleged, that the child is in need of supervision, care, or rehabilitation. If a violation of law is the basis for filing the petition, the petition shall cite the statute or municipal ordinance which the child is alleged to have violated;
In the case before us a petition was filed on March 15, 1974 by the District Attorney of the Thirty-first Judicial District. It is not contended that the petition is defective. Appellant's claim is that the petition sets forth the information required by LSA-R. S. 13:1574, but that he was committed for some other charge or offense. The portion of the petition which is pertinent to the contention being made by appellant, reads as follows:
"... said child is within the provisions of Title 13, Sections 1569, et seq., *475 and is a child in need of supervision, care, and rehabilitation for having committed the following delinquent act, towit: On or about January 18, 1974, James L. Simon did unlawfully commit the crime of receiving stolen things by receiving one ring, valued at $250.00, property of Mrs. Wade Lormand, under circumstances which indicate that the said James L. Simon knew or had good reason to believe that the said ring was the subject of a theft, in violation of L. R.S. 14:69."[1]
Facts
The facts surrounding the alleged offense, as developed by the hearing in juvenile court, are that the appellant was given a ring to hold by another youth during a physical education class. The appellant, according to the testimony of the other youth, put the ring in his pocket, and later in the day, the appellant was requested to return the ring. The appellant, again according to the other youth, said he did not have the ring so the other youth complained to the school principal. The appellant was summoned from his class and instructed to get the ring from his locker. When appellant returned from the locker area, he told the principal that he had lost the ring coming up the stairs. The youth who gave appellant the ring later searched for it, but, according to his testimony, he was unable to find the ring. On cross-examination, it was developed that the youth had not told appellant that the ring was stolen. He apparently led appellant to believe that he had purchased the ring.
The school principal confirmed that he had called appellant in, that appellant informed him that the ring was in his locker and that appellant was instructed to bring it to the office. The principal testified further that when appellant came back, he reported that he had lost the ring.
Another witness was a thirteen year old youth who testified that appellant had asked him to help look for the ring. He indicated that he did not actually search for it because he was in a hurry.
The only other witness to testify was a State Juvenile Probation and Parole Officer, Joe Fairfield. This officer testified that he knew appellant and that he had consulted with him about the loss of the ring. He testified that he had also discussed the matter with appellant's parents. Mr. Fairfield also described his search for the ring at the school building, which actually appears to have been an attempt to duplicate the loss of the ring or determine the likelihood of an occurrence such as appellant had described previously to the probation officer. The substance of Mr. Fairfield's testimony was that the story told to him by appellant as to how the ring was lost was improbable.
*476 Appellant did not testify but invoked his constitutional privilege not to do so. Clearly, a juvenile is not required to testify if he chooses to remain silent and this is not to be construed against him. Amendment V, United States Constitution; LSA-R.S. 13:1579.
Pre-Hearing Report
No mention is made here of certain information which is contained in a document appearing in the record at TR. 6-11, entitled "Confidential Pre-Hearing Investigation Report". First, there is no method of determining whether the juvenile court relied on the information contained in this document in considering appellant's case. From the title of the document an implication arises that this report was submitted to the juvenile court prior to the hearing and determination of appellant's case. Such a procedure has been the practice in some juvenile courts in the past.[2] We omit any reference to the information contained in the report for another reason. We believe it to be reversible error for a juvenile court to receive a report containing hearsay evidence, opinions and recommendations prior to making an adjudication. In re State In the Interest of Elliott, 206 So.2d 802 (La.App. 2 Cir. 1968); Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). It is interesting to note that our brothers of the Second Circuit reached a similar conclusion in the Elliott case, supra, which involved a charge of neglect, not delinquency. They raised a serious question as to the validity of LSA-R.S. 13:1579.1 which at that time authorized receipt of hearsay evidence:
"The introduction of such testimony is clearly unauthorized under the general rules long and well established and recognized in the jurisprudence of this State, for the reason among many others, that the party against whom the evidence is sought to be used is deprived of the right of cross-examination to test and determine the truth of all such statements." 206 So.2d 804.
On the other hand we see no error, once a juvenile has been adjudicated delinquent or otherwise properly held to be subject to the jurisdiction of the juvenile court, in the receipt of a report or reports from probation officers, social workers, or other persons acting as officers of the court and assisting the court to make a proper disposition of the youth, even though such report or reports contain hearsay evidence or opinions which would not be admissible in the adjudication of the case.
The possible difference in evidentiary standards and procedural requirements dictate, as a practical matter, the necessity of a double hearing in juvenile matters. Many procedural problems can be avoided by dividing the hearing into an adjudicatory phase and a dispositional phase. Not doing this risks commission of reversible error.
*477 Reasons for Judgment
After hearing the witnesses whose testimony is reviewed above, the juvenile court signed a judgment in the terms previously quoted. However, to fully state the decision of the juvenile court it is necessary to also quote the reasons assigned in open court for the judgment rendered and the exchange in court between the juvenile judge and the attorney for appellant. It was as follows:[3]
"THE COURT: The Court is going to rule in the matter that this child is in need of supervision, care, and rehabilitation. The Court does not feel that he had knowledge of the fact that he was receiving stolen things, but the Court does feel that he was at fault in taking this ring and not returning it.
"The Court does not believe that the ring was lost; the Court does believe that he either still has this ring, or that he has disposed of it at his ownat his own ends. And for this reason, The Court feels that he is in need of supervision, care, and rehabilitation and will assign him to the diagnostic center.
"MR. GUIDRY: Your Honor, we understand the ruling. As I understand, the Defendant was charged specifically with receiving stolen goods and that it is the ruling of the Court that he is not guilty of
"THE COURT: He's not guilty of this, but he is in need of supervision for the reason that he did know that this ring did not belong to him; he took the ring, he did not return it. It was in his locker; he said he lost it. Mr. Fairfield has testified that he could not have lost it where he said he lost it. The Court feels that the child did not tell the truth. The child claimed the right against self incrimination; he would not talk to the Court. This is a juvenile hearing and the Court thinks that under these circumstances, he certainly is in need of supervision of the State."
As to the charge of violating LSA-R.S. 14:69, Receiving Stolen Things, the juvenile judge obviously concluded that appellant did not know or have good reason to believe the ring was stolen. He therefore held correctly that appellant had not violated the criminal statute; an essential element was not proved. In re Glassberg, 230 La. 396, 88 So.2d 707 (1956); State v. Melanson, 259 So.2d 609 (La.App. 4 Cir. 1972).
Issues
The issues thus presented for our determination are: (1) whether appellant was committed to the Department of Corrections, State of Louisiana, on a charge other than that specified by the petition filed against him; and (2) if so, is there a violation of his constitutional or statutory rights which would require that the commitment be set aside.
As to the first issue, a mere reading of the quoted portions of the judgment, the reasons for judgment, and the charge in the petition is sufficient to answer the first issue affirmatively. Appellant was found not to have committed the criminal offense alleging in the petition, but he was committed as being in need of supervision.
We have reflected on the question of whether the appellant was charged with being delinquent or merely in need of supervision, care or rehabilitation under the terms of LSA-R.S. 13:1569. We have concluded that appellant was in fact charged with delinquency even though it is not clear from the wording of the petition. Significant in this connection is the wording of the petition which refers to a "delinquent act" and which referred to a specific criminal law which was alleged to have *478 been violated. Therefore, we determine that appellant was charged with being delinquent.
The second issue is whether in committing appellant, as being a child in need of supervision for having committed some other offense, the statutory and constitutional rights of the child were violated.
Notice of the specific charges against an accused, whether adult or juvenile, is fundamental to the law of the State of Louisiana and that of the United States. The Louisiana Constitution of 1921 requires an accused to be informed of the nature and cause of the accusation against him. Article 1, Section 10. Louisiana statutory law requires that a juvenile and his parents be informed of a specific charge against the youth. LSA-R.S. 13:1574, 13:1575. This is in accord with the notions of due process of law as provided by the Fourteenth Amendment of the Constitution of the United States. The United States Supreme Court, speaking of due process, has said:
"It does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake without giving them timely notice, in advance of the hearing, of the specific issues that they must meet." Application of Gault, supra, 87 S.Ct. 1428 at 1447.
This rule has been recognized in Louisiana. Judge Ellis writing for the First Circuit in In re State in Interest of Hampton, 257 So.2d 459 (La.App. 1 Cir. 1972), summarized the requirement as follows:
"... a juvenile may not be adjudged delinquent unless his guilt of the specific charges against him is shown in accordance with the foregoing principles. That is, a judge may not make a finding of delinquency based on misconduct other than that which is set forth in the petition. This would violate the constitutional right of the juvenile to be notified of the charges against him." 257 So.2d 459 at 460.
It is important to note that appellant is only fourteen years of age. Under the terms of his commitment he could be held in an institution until age eighteen, a period of almost four years.
Our Louisiana courts have realized the serious consequences of commitment by a juvenile court. In State in Interest of Ogletree, 244 So.2d 288 (La.App. 4 Cir. 1971), it was declared:
"The requirements of proof must be stringent if severe consequences flow from a finding of delinquency based on this proof. A juvenile should not be subjected to possibility of institutional confinement on proof insufficient to convict him if he were an adult. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)." 244 So.2d 290.
We find that there was a violation of appellant's rights which requires setting aside the commitment.
Before entering an order in this matter, we must dispose of the application for suspensive appeal and we desire to comment on other procedural questions raised either directly or incidentally by the present case.
Motion for Suspensive Appeal
In this case, an application for a suspensive appeal was filed with this court. LSA-R.S. 13:1591. However, on inquiry, it was determined that the record had been completed or was virtually complete for purposes for appeal. Therefore, this court directed that the record be transmitted to us forthwith and the matter was immediately set down for hearing. In view of the immediate hearing and the disposition of the matter by this court, the application for a suspensive appeal is now moot.
Other Procedural Issues
There is no question that the judge who committed appellant and the district attorney, as well as counsel for appellant, were motivated by a desire to promote the best interests and welfare of the youth involved *479 and to protect society from delinquent conduct. They are mindful, as is this court, of the mandate of our law which says that juvenile statutes shall be:
"... construed to the end that each child coming within the jurisdiction of the court shall receive such care, guidance and control, preferably in his own home, as will conduce to the child's welfare and best interests of the state..." LSA-R.S. 13:1592.
To facilitate achievement of these goals, we believe care must be taken in juvenile court proceedings, both to protect the rights of the youths involved and to effectively administer the law. Several of the proper procedural steps have been mentioned in this opinion. We find error only in the commitment on a charge not specified in the petition.
We note with approval the filing of a particularized petition, granting ample opportunity to prepare, affording the right of counsel,[4] and a properly conducted hearing which was reported or recorded for purposes of appeal.
We would have suggested, however, to our esteemed brother of the juvenile court that the proceeding be divided into first, an adjudicatory hearing, and second, a dispositional hearing. There is no reason why these may not be held on the same day one after the other, if appropriate and if the parties are prepared. Cf. In re State in Interest of Collins, 288 So. 2d 918 at 920 (La.App. 1 Cir. 1973). To take evidence, however, concerning family history, prior arrests, school situation and the like, while attempting to determine delinquency is to chance error. Many of the matters properly considered on disposition are entirely irrelevant and immaterial on the question of whether a certain criminal statute has been violated. The better procedure, we suggest, is not to take up disposition until after an adjudication of delinquency. The adjudication must be on admissible evidence constituting proof beyond a reasonable doubt. LSA-R.S. 13:1579.1; In re State in Interest of Taylor, 255 So.2d 361 (La.App. 1 Cir. 1971). If the youth is found delinquent, or otherwise subject to the jurisdiction of the juvenile court, disposition can then be considered. An added advantage of the double hearing (sometimes referred to as "split" or "bifurcated" by legal writers) is that, if the juvenile is found not delinquent, time has not been wasted on dispositional considerations.
Order
It is therefore, ordered, adjudged and decreed that the commitment of appellant, James L. Simon, be and it is hereby annulled, and the Department of Corrections is ordered to discharge him.
Any further proceedings concerning this youth, of course, will be left within the discretion of local authorities.
Commitment annulled and set aside; petition dismissed.
HOOD, J., dissents and assigns written reasons.
HOOD, Judge (dissenting).
I am unable to concur in the majority opinion.
My colleagues have found that the juvenile, James L. Simon, "was in fact charged with delinquency." I do not agree. The petition seeks only to have him declared to be "a child in need of supervision, care and rehabilitation." There is no prayer in the petition that he be decreed to be delinquent, and the judgment rendered by the court does not find him to be delinquent.
*480 On the contrary, the court specifically decreed that he committed an offense "not classified as criminal," and that because of the non-criminal offense which he committed, he is "in need of supervision, care and rehabilitation."
Under the provisions of LSA-R.S. 13:1561-1599, and particularly LSA-R.S. 13:1569 and 1579.1, proceedings may be instituted in a juvenile court to have a child declared to be any one of the following:
(a) Delinquent;
(b) Neglected or dependent;
(c) In need of supervision;
(d) In need of the protection of the state; or
(e) Abandoned.
A "delinquent child" is defined in LSA-R.S. 13:1569, as follows:
"14. `Delinquent child' means a child who has committed a delinquent act and is in need of care or rehabilitation."
A "child in need of supervision" is defined in the same section as:
"15. `Child in need of supervision' means a child who:
"a. Being subject to compulsory school attendance, is habitally truant from school; or
"b. habitually disobeys the reasonable and lawful demands of his parents, tutor, or other custodian, and is ungovernable and beyond their control; or
"c. has committed an offense not classified as criminal or one applicable only to children; and
"d. in any of the foregoing, is in need of care or rehabilitation." (Emphasis added).
In this case the petition alleges and seeks to have the juvenile declared to be only a "child in need of supervision." It is true that the grounds alleged for seeking that relief are that he committed a criminal act, that is, receiving stolen property. I see no objection to alleging the commission of an offense which is more serious than necessary in order to support the prayer of the petition. And I believe that in this case, because of the allegation and prayer of the petition, the court could not have declared the child to be delinquent, even if all of the elements of the criminal offense of receiving stolen property had been proved. I do not subscribe to the view that since the petition alleges a criminal act as the basis for the relief sought, any judgment rendered by the court in response to that petition must be regarded as a declaration that the child is delinquent, and that the court cannot consider and grant the relief actually sought based on a lesser included offense.
The evidence produced at the hearing established that the child did receive a stolen ring, although he was not aware of the fact that it was stolen, that he knew that it was not his ring, and that he nevertheless kept the ring or disposed of it for his own use, and thus failed or refused to return it to the person who had intrusted it to him. In my opinion the boy committed an "offense," within the meaning of LSA-R.S. 13:1569(15), and the evidence thus is sufficient to support the decree of the trial court declaring him to be in need of supervision.
Actually, I think the evidence shows that the child committed the crime of "theft," as defined in LSA-R.S. 14:67. I concede that in criminal law the crime of theft may not be a lesser included criminal offense to the crime of receiving stolen things, but as will be pointed out later in this dissent, this case must be governed by the Code of Civil Procedure rather than procedures applied in criminal law. LSA-C.C.P. art. 891 provides that the petition shall contain a short, clear and concise statement of the object of the demand and of the material facts upon which the cause of action is based. The petition in this case sets out clearly all of the facts which were actually *481 proved and on which the trial court based its decision. All of the requirements of the Code of Civil Procedure thus were met. In my view, the "offense" which was shown to have been committed by the boy was a lesser offense than the one alleged in the petition, and I think it clearly was included in the more serious one.
There certainly can be no objection to the trial judge's holding that the boy committed an "offense not classified as criminal," when he might properly have held that the offense actually committed was criminal in nature. Such a holding benefited the child, and the appellant thus has no right to complain of it.
Our laws make a distinction between a proceeding which seeks to have a child declared to be "delinquent" and a proceeding which seeks only to have him declared to be "in need of supervision." LSA-R.S. 13:1579, relating to hearings in the juvenile court, provides that, "The hearing shall be conducted in accordance with the general rules of procedure used in civil proceedings...." LSA-R.S. 13:1579.1 provides:
"The rules of evidence prevailing in proceedings governed by the Code of Civil Procedure shall be applicable to a proceeding to declare a child delinquent, neglected or dependent, in need of supervision, in need of the protection of the state or abandoned; provided, however, no child shall be adjudged to be delinquent in the absence of proof beyond a reasonable doubt that such condition exists." (Emphasis added).
It is apparent that in all juvenile proceedings, including those seeking to have a child declared to be delinquent, the rules of Civil Procedure are applicable, and it is only when a child is to be adjudged "delinquent" that the proof must be beyond a reasonable doubt.
The majority cites several cases as authority for their conclusion that the decree of the trial court must be reversed. The principal ones relied on are In re State in Interest of Hampton, 257 So.2d 459 (La. App. 1 Cir. 1972); and State in Interest of Ogletree, 244 So.2d 288 (La.App. 4 Cir. 1971). I find that none of those cases are applicable. Every case cited, except one, involved a judgment decreeing a child to be "delinquent." The case which did not involve such a circumstance was In re State In the Interest of Elliott, 206 So.2d 802 (La.App. 2 Cir. 1968), but that case involved a proceeding against an adult. In the instant case the child was not found to be delinquent, and the petition never alleged or prayed that he be declared to be such.
My colleagues also base their decision partly on the fact that the record contains a document entitled "Confidential Pre-Hearing Investigation Report." They concede that they are unable to determine whether the judge ever saw or considered the information contained in that document, but they assume that he did, and that the report influenced his decision. On the basis of that assumption they hold that he committed reversible error. I disagree with the assumption made by the majority, and with its ruling based on that assumption.
In the first place, there is no mention in the record, in the reasons assigned by the trial court, or in the judgment rendered by that court, that this report was ever introduced in evidence, or that it was ever seen or considered in any way by the trial judge. There is no basis for assuming that the report influenced the decision of the trial court. It thus is error to assume that the trial court considered that report in rendering its judgment.
Second, the majority opinion suggests that the child was deprived of his right of cross examination, since the trial court is assumed to have considered this report in rendering the judgment appealed from. The record shows that the report was prepared, signed and submitted by Mr. Joe Fairfield, the Juvenile Probation and Parole *482 Officer. Mr. Fairfield was called as a witness by the state in the trial of this case, and he was subjected to cross examination by the attorney for the child. The child thus was not deprived of the right to be confronted with the witness and to cross examine him.
Third, the record shows that this case was tried and judgment was rendered on March 27, 1974. The report prepared and signed by Mr. Fairfield was filed in the record on that same day, March 27, 1974. There is no showing that it was filed before or after the judgment was rendered. If it was filed after the trial was concluded, then it could not have influenced the decision, because the record shows that judgment was rendered immediately after presentation of the evidence was completed. If it was filed before the end of the trial, then the report was as available to the attorney for the child as it was to the court. In any event, the record does not support the majority's assumption that this report was made available to the trial judge prior to the trial and that it influenced his decision, while the child's attorney was not given an opportunity to see it or to cross examine the author of that report.
I am not willing to hold at this time that a reversible error was committed even if the trial judge had received or seen the report prior to the trial. LSA-R.S. 13:1574 seems to authorize the submitting of such a report to the court before a petition is filed. That section reads, in part, as follows:
"Whenever any person informs the court that a child is within the purview of this chapter, the court shall cause to be made an inquiry to determine whether the interests of the public or of the child require that further action be taken. Whereupon the court may make such informal adjustment as is practicable without a petition or may authorize a petition to be filed by any person; ..."
This statutory provision obviously was intended to give the court an opportunity to make an "informal adjustment" of the case without having to bring the child into court. I find no objection to such a procedure. On the contrary, I think it is in keeping with the provisions of LSA-R.S. 13:1592, a portion of which was quoted in the majority opinion. If we hold that receiving such a report prior to trial constitutes reversible error, then to be consistent with that holding we may have to hold in future cases that the trial judge commits reversible error if he reads a newspaper account of the child's conduct before the trial.
In my opinion no rights of the child were violated in this case. The evidence supports the judgment which was rendered by the trial court, and I do not believe that we should interfere with that court's discretion in determining the type of supervision which the child needs.
The majority comments that the child in this case is only 14 years of age, and that under the terms of his commitment he could be held in an institution until age 18, "a period of almost four years." It is apparent from the language used that the majority feels that the judgment was too severe. I also feel that a commitment for almost four years would be too severe in this case, but the judgment does not require that the commitment be for that entire period of time. The judgment simply decrees that the child be committed to the care of the Department of Corrections "for an indefinite period not to exceed his majority." I do not interpret the judgment as meaning that the boy must remain committed for almost four years.
For these reasons I respectfully dissent from the majority opinion.
NOTES
[1] § 69. Receiving stolen things

Receiving stolen things is the intentional procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
Whoever commits the crime of receiving stolen things, when the value of the things is five hundred dollars or more, shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.
When the value of the stolen things amounts to one hundred dollars or more, but less than a value of five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.
When the value of the stolen things amounts to less than one hundred dollars, the offender shall be imprisoned for not more than six months, or may be fined not more than five hundred dollars, or both. If the offender in such cases has been convicted of receiving stolen things two or more times previously, upon any subsequent conviction he shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than one thousand dollars, or both.
When the offender has committed the crime of receiving stolen things by a number of distinct acts, the aggregate of the amount of the things so received shall determine the grade of the offense.
[2] The practice of receiving social reports prior to hearing was probably more prevalent prior to the amendment of LSA-R.S. 13:1579.1 which prior to amendment read as follows:

In the hearing of all cases under this Part, involving petitions of juvenile delinquency or neglect, all facts connected therewith and all surrounding circumstances, including the environment and history of the child, together with any character of evidence, including hearsay evidence and opinion evidence which the court, in its discretion, may deem proper, may be admissible, and the testimony of the probation officer assigned to the case shall be admissible.
In 1972 the legislature removed the authorization to receive hearsay, opinion evidence, etc., by amending the statute to read as follows:
The rules of evidence prevailing in proceedings governed by the Code of Civil Procedure shall be applicable to a proceeding to declare a child delinquent, neglected or dependent, in need of supervision, in need of the protection of the state or abandoned; provided, however, no child shall be adjudged to be delinquent in the absence of proof beyond a reasonable doubt that such condition exists.
[3] Taken from page 2 of the Transcript attached to a Motion for Suspensive Appeal filed in this court on April 29, 1974 and certified by Tim West, Official Court Reporter, 31st Judicial District.
[4] No problem arose in this case concerning appointment of counsel. The right to counsel and to be provided free counsel, if financial circumstances require, can be explained to the juvenile and his parents on their first appearance in court; and such explanation should be made part of the record. The same procedure can be followed concerning the right against self-incrimination. See LSA-R.S. 13:1579, subd. A.