160 So.2d 340 (1964)
The STATE of Louisiana in the Interest of Murray James GARLAND.
No. 1246.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1964.
Peter J. Casano, George Garzotto, New Orleans, James Gaudet, Gretna, for defendants-appellants.
Before SAMUEL, CHASEZ and TURNER, JJ.
CHASEZ, Judge.
This is an appeal from a judgment of the Juvenile Court of Jefferson Parish, committing Murray J. Garland, a juvenile, to an *341 indefinite stay at the Louisiana Training Institute at Monroe. This appeal is consolidated with La.App., 160 So.2d 344, being a similar appeal by Larry Carl White, who was also committed to the Louisiana Training Institute at Monroe for an indefinite stay, on the same evidence taken in the same proceedings leveled against Murray J. Garland; and the two appeals are treated together herein.
Jurisdiction of this court is founded upon Section 29, Article VII of the LSA-Constitution.
The proceedings were initiated by separate petitions alleging that each juvenile is: "juvenile delinquent-apprehended for burglary and theft."
There appear in the records with the petitions a detailed listing of 13 burglaries, 3 attemped burglaries and 4 acts of vandalism, and 2 handwritten confessions (together with inaccurate typewritten transcripts thereof) in which the two juveniles admit the majority of the listed offenses.
There is no significant evidence in the record, except for the two confessions by appellants, to connect appellants with the listed burglaries and thefts or any other burglary or theft.
The testimony shows that Garland, then 15 years old, was taken into custody by two deputy marshals of the City of Kenner Police Department, at about 3:15 a. m., on February 18, 1963. So far as is shown by the record those two officers had no reason to link Garland with any burglary or theft, nor, indeed, any other reason to apprehend Garland except for his presence on the street at that inappropriate hour.
LSA-R.S. 13:1577 provides:
"Whenever a child is taken into detention, unless it is impracticable or inadvisable or has been otherwise ordered by the court, he shall be released to the care of a parent or custodian, upon the promise of such parent or custodian to bring the child to the court at the time fixed. The court may require a bond from such person for the appearance of the child; and upon the failure of such person to produce said child when directed to do so, the court may, in addition to declaring the bond forfeited, punish said person as in case of contempt. If not so released such child shall be taken immediately to the court or to the place of detention designated by the court or probation officer. Any police officer, sheriff, probation officer, or other peace officer violating any of the terms of this article may be judged guilty of contributing to the act or condition which would bring a child within the provisions of R.S. 13:1561 through 13:1592. Pending further disposition of the case, the child may be released to the care of a parent, agency or other person appointed by the court, or be detained in such place as shall be designated by the court or probation officer, subject to further order.
"Nothing in R.S. 13:1561 through 13:1592 shall be construed as forbidding any peace officer from immediately detaining any child who is found violating any law or ordinance, or whose surroundings are such as to endanger his welfare. In every case the officer detaining any child shall immediately, and in any event within twenty-four hours, report the fact to the court or probation officer and the case shall then be proceeded with as provided in R.S. 13:1561 through 13:1592.
"No child shall be confined in any police station, prison, or jail, or be transported or detained in association with criminal, vicious or dissolute persons; except that a child fifteen years of age or older may be placed in a jail or other place of detention for adults, but in a room or ward entirely separate from adults."
Garland was not released to his parent or custodian although no showing of impracticability *342 or inadvisability has been made; nor was he taken immediately to the Juvenile Court or to a place of detention designated for the juvenile by the court or Probation Officer. Instead he was interrogated by the Kenner Police in the investigation conducted by them over a period of nearly six hours until about 9:00 a. m.
We desire here to observe that we do not consider inappropriate under certain circumstances the action of the police in taking a 15 year old child into custody when found upon the street at 3:15 o'clock in the morning. We believe the police would have no right whatsoever to apprehend a person of full age merely because of his presence on the street at such an hour. A child so taken into custody merely for his own protection, however, should by all means be returned to his home or otherwise offered the protection he needs; as a minimum, the provisions of LSA-R.S. 13:1577 should be followed.
It would, we say, have been quite proper and conducive to Garland's welfare to have taken him off the street and to his home. But the police had no authority to arrest Garland without a warrant for his arrest just as they would have had no authority to arrest a major under the same circumstances; LSA-R.S. 15:59 and 15:60.
We are of the opinion that under both LSA-R.S. 13:1577 and LSA-R.S. 15:59 the detention and interrogation of Garland by the Kenner Police were unauthorized by law.
Meanwhile, by 5:30 a. m., Garland having identified White (also age 15) as a companion, the Kenner Police went to White's home in Kenner and at that pre-dawn hour awoke him from his sleep and took him from his home to the Kenner jail.
White was likewise not dealt with as required by LSA-R.S. 13:1577. On the contrary, he too was interrogated by the Kenner Police in their investigation until about 9:00 a. m., at which time both Garland and White signed the two confessions.
Prior to 9:00 a. m., at about 7:00 a. m., Garland's mother was told over the telephone by the Kenner Police that she could not see her son. Nevertheless at 7:30 a. m., she went to the Kenner jail to see him; she was refused admittance and was told that the police were interrogating him in connection with their investigation regarding the child; that she should return later, and that they should be through after 9:00 a. m.
Garland testified he was refused the use of a telephone to call his parents, and one of the police officers testified that they declined to allow the juveniles the use of the telephone until after they had completed their investigation and the confessions were signed.
This court is persuaded that the confessions thus obtained were not freely and voluntarily made and cannot be used against the juveniles, La.Const. Art. 1, Sec. 11, nor be admitted in evidence, consistent with the due process of law assured by La. Const. Art. 1, Sec. 2 and U.S.Const. Amend. XIV.
In State v. Roberson, 157 La. 974, 103 So. 283 (1925), our Supreme Court noted that the Louisiana Constitution Art. 1, Sec. 11 goes much further than the U.S. Constitution in providing "* * * No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel confession of crime; nor shall any confession be used against any person accused of crime unless freely and voluntarily made." The court concluded that:
"[A]ny persistent effort to obtain a statement from a person in custody, by repeatedly subjecting him to cross-examination after he has refused to make such statement, is `treatment designed by effect on body or mind to compel a confession of crime'; and that a confession so obtained cannot be used against an accused."
While Roberson's facts are different from those present here, we believe that the additional factor of the youth of the present *343 appellants fairly brings this case within the rule quoted above.
On the due process point, we consider the facts of Haley v. State of Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), very similar to those of this case. There a 15 year old boy was taken from his home at midnight, questioned by the police for five hours, with no friend or counsel present. At about 5:00 a. m., after being shown alleged confessions of alleged accomplices, the boy confessed. We quote from 332 U.S. 599-601, 68 S.Ct. 303-304, 92 L.Ed. 224, passim:
"We do not think the methods used in obtaining this confession can be squared with the due process of law which the Fourteenth Amendment commands.
* * * * * *
"What transpired would make us pause for careful inquiry if a mature man were involved. * * *
* * * * * *
"The age of petitioner, the hours when he was grilled, the duration of his quizzing, the fact that he had no friend or counsel to advise him, the callous attitude of the police towards his rights combine to convince us that this was a confession wrung from a child by means which the law should not sanction. Neither man nor child can be allowed to stand condemned by methods which flout constitutional requirements of due process of law.
* * * * * *
"* * * The Fourteenth Amendment prohibits the police from using the private, secret custody of either man or child as a device for wringing confessions from them."
In Gallegos v. State of Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962), a juvenile court proceeding resulting in an indeterminate commitment to an Industrial School was involved. The court, citing Haley, among other authorities, reversed a conviction based in part on a confession obtained under somewhat similar circumstances, declaring, at 370 U.S. 55, 82 S.Ct. 1213, 8 L.Ed.2d 325:
"* * * The youth of the petitioner, the long detention, the failure to send for his parents, the failure immediately to bring him before the judge of the Juvenile Court, the failure to see to it that he had the advice of a lawyer or friendall these combine to make us conclude that the formal confession on which this conviction may have rested * * * was obtained in violation of due process."
Here the juveniles were grilled by members of the police force of the City of Kenner from time of arrest at 3:15 a. m., to 9:00 a. m., in one instance and 5:30 a. m., to 9:00 a. m., in the other without having the right of counsel with friends, parents or persons standing in loco parentis or attorneys, or the judge of the juvenile court or any of the probation officers of the juvenile court upon whom the law places the onus of making investigations in juvenile matters. After this investigation, interrogation and grilling, confessons were signed by the minors, although they had previously refused to do so.
We conclude that the admission into evidence of the involuntary confessions in this case denied appellants the due process of law guaranteed by both state and federal constitutions, and that, since no other evidence in the record justifies the Juvenile Court's conclusion of delinquency of both minors by reason of burglary and theft, the judgment committing appellants to the Louisiana Training Institute must be reversed.
We wish to emphasize, however, that we do not mean to place purely technical obstacles in the path of juvenile proceedings. We are aware of the informality directed for such proceedings by LSA-R.S. 13:1579; of the very broad discretion as to admissibility of evidence accorded Juvenile Courts by LSA-R.S. 13:1579.1; of the *344 parens patriae concept emphasized by LSA-R.S. 13:1580 in seeking always the protection of the juvenile; and of the liberal construction of the statute ordered by LSA-R.S. 13:1592 "* * * to the end that each child coming within the jurisdiction of the court shall receive such care, guidance and control * * * as will conduce to the child's welfare and best interests of the state * * *."
Nevertheless, an indispensable preliminary to placing a child under that care, guidance and controlhowever conducive it might be to his welfareis that the child be shown, by reasonable and constitutional proof, to be in fact delinquent as charged LSA-R.S. 13:1570. Otherwise the Juvenile Court has no jurisdiction over the child, and no power to afford to the child the State's benevolent and solicitous care.
Obviously, then, the question whether or not the child is in fact delinquent is not a technicality.
We further note, by way of protecting the subject juveniles in their reputations, that this case is not one where "* * * [t]he criminal is to go free because the constable has blundered"; People v. Defore, 242 N.Y. 13, 21, 150 N.E. 585 (1926). In fairness to the juveniles here involved we point out that the confessions appear to be false in at least two particulars. One burglary referred to in the confession could not have been perpetrated by the two 15 year old juveniles, because they could not have physically removed the quantity of property involved, as even the homeowner agreed in his testimony. Another supposedly committed after midnight of the morning when the boys were arrested at 3:15 o'clock a. m., and 5:30 o'clock a. m., was of $160.00 in nickels and quarters, yet the boys had only the usual personal effects when arrested.
We are aware that physical maltreatment of the juveniles by the police in procuring the confessions, and the dictating of the confessions by the police, are charged by the boys, and denied by the police. However, in view of the undisputed facts already recited above, consideration of this phase of the testimony is unnecessary.
The judgment appealed from is reversed and set aside, and it is now ordered, adjudged and decreed that the juvenile, Murray J. Garland, be and he is hereby discharged from the jurisdiction of the Juvenile Court for the Parish of Jefferson on the charges herein.
Reversed and rendered.