285 So.2d 308 (1973)
In re STATE of Louisiana In the Interest of Nathan WESLEY.
No. 5886.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1973.
Rehearing Denied November 30, 1973.
Norman J. Pitre, Asst. Dist. Atty., for appellee.
William D. O'Regan, La Place, for appellant.
Before SCHOTT, J. and P. C. St. AMANT and WALLACE C. Le BRUN, JJ., Pro Tem.
*309 P. C. St. AMANT, Judge Pro Tem.
Nathan Wesley, a child 14 years of age, appeals from a judgment of the Juvenile Court of the Parish of St. Charles committing him to the Department of Corrections for an indefinite period not to exceed his 21st birthday. This court has appellate jurisdiction under the provisions of LSA-Const. Art. VII, Sect. 29.
Wesley was charged with having committed the offense of simple burglary of the LeBlanc Conoco Station in Destrehan, St. Charles Parish, Louisiana, on August 30, 1972. On this appeal his court appointed counsel contends primarily that the trial court erred in denying his motion to suppress a written confession allegedly obtained from the child some three hours after the burglary.
The testimony in the record indicates that on the night of August 30, 1972, St. Charles Parish Deputy Sheriff Joseph I. Waguespack was on routine patrol on the 10:00 p. m. to 6:00 a. m. shift; that at approximately 11:00 p. m. he observed a white Chevrolet automobile pulling away from the LeBlanc service station at a high rate of speed; that he pursued the auto down a side street where the auto stopped, one person got out and ran away, and the pursuit continued until the vehicle was stopped on the grounds of the Destrehan High School where three suspects, two adults and Wesley, were taken into custody.
Deputy Waguespack called for assistance and the office dispatched Deputy Howard Walker who joined Deputy Waguespack on the school grounds to assist in the investigation. The officers found a cardboard box on the back seat of the vehicle containing cigarettes, chewing gum and matches.
Upon returning to the service station the officers found that the front door had been broken open, and upon entering the building, that the cigarette machine and the desk drawers had also been broken open. Wesley, who had been arrested on the school grounds shortly after 11:00 p. m., was detained at the service station with the adults involved while the officers concluded their investigation and searched unsuccessfully for the suspect who had escaped from the car.
Following the conclusion of the investigation Wesley and the two adult offenders were taken to the sheriff's sub station in Norco, Louisiana, where they arrived at approximately 1:30 a. m. the following morning, or some 2½ hours after the arrests were made.
The officers testified that the two adult suspects were interrogated first, that Wesley was brought into the "interrogation room" last, that after being advised of his constitutional rights in accordance with the Miranda decision he voluntarily gave a statement which Deputy Walker reduced to writing, read back to Wesley, and then had Wesley sign after affording him an opportunity to read the statement himself. The statement indicates the time at approximately 2:00 a. m. Wesley was subsequently released to the custody of his mother at about 5:00 a. m.
Counsel for the juvenile attacks the admissibility of the statement on various grounds. Finding that one has merit we pretermit a consideration of the remainder.
According to the officers themselves a child under the age of 15 years was both detained and transported in association with adult offenders, and was further confined and interrogated in a police station, all in violation of the explicit prohibitions set forth in LSA-R.S. 13:1577 providing as follows:
"A. Whenever a child is taken into custody, unless it is impracticable or inadvisable or has been otherwise ordered by the court, he shall be released to the care of a parent, tutor or other custodian, upon the promise of such parent, tutor or custodian to bring the child to the court at the time fixed. The court may *310 require a bond from such person for the appearance of the child; and upon the failure of such person to produce the child when directed to do so, the court may, in addition to declaring the bond forfeited, punish that person as in case of contempt. If not so released such child shall be taken immediately to the court or to the place of detention designated by the court or probation officer. Any police officer, sheriff, probation officer, or other peace officer violating any of the terms of this section may be judged guilty of contributing to the act or condition which would bring a child within the provision of this chapter. Pending further disposition of the case, the child may be released to the care of a parent, tutor, agency or other person appointed by the court, or be detained in such place as shall be designated by the court or probation officer subject to further order.
"B. Nothing in this chapter shall be construed as forbidding any peace officer from immediately taking into custody any child who is found violating any law or ordinance, or whose surroundings are such as to endanger his welfare. In every case the officer taking into custody any child for detention shall immediately and in any event within twenty-four hours, report the fact to the court or probation officer and the case shall then be proceeded with as provided by law.
"C. Except as hereinafter provided, no child shall be confined in any police station, prison or jail, or be transported or detained in association with criminal, vicious or dissolute persons. A child fifteen years of age or older may be placed in a jail or other place of detention for adults, but in a room or ward entirely separate from adults."
The above quoted statute has been construed previously by this court in the companion cases of In Re Garland, La.App., 160 So.2d 340 (1964) and In Re White, La.App., 160 So.2d 344 (1964). In Garland this court, after quoting the statute, made the following observations (160 So. 2d 341-343):
"Garland was not released to his parent or custodian although no showing of impracticability or inadvisability has been made; nor was he taken immediately to the Juvenile Court or to a place of detention designated for the juvenile by the court or Probation Officer. Instead he was interrogated by the Kenner Police in the investigation conducted by them over a period of nearly six hours until about 9:00 a. m.
* * * * * *
"White was likewise not dealt with as required by LSA-R.S. 13:1577. On the contrary, he too was interrogated by the Kenner Police in their investigation until about 9:00 a. m., at which time both Garland and White signed the two confessions.
* * * * * *
"This court is persuaded that the confessions thus obtained were not freely and voluntarily made and cannot be used against the juveniles, La.Const. Art. 1, Sec. 11, nor be admitted in evidence, consistent with the due process of law assured by La.Const. Art. 1, Sec. 2 and U.S.Const. Amend. XIV.
* * * * * *
"Here the juveniles were grilled by members of the police force of the City of Kenner from time of arrest at 3:15 a. m., to 9:00 a. m., in one instance and 5:30 a. m., to 9:00 a. m., in the other without having the right of counsel with friends, parents or persons standing in loco parentis or attorneys, or the judge of the juvenile court or any of the probation officers of the juvenile court upon whom the law places the onus of making investigations in juvenile matters. After this investigation, interrogation and grilling, confessions were signed by the minors, although they had previously refused to do so.

*311 "We conclude that the admission into evidence of the involuntary confessions in this case denied appellants the due process of law guaranteed by both state and federal constitutions, and that, since no other evidence in the record justifies the Juvenile Court's conclusion of delinquency of both minors by reason of burglary and theft, the judgment committing appellants to the Louisiana Training Institute must be reversed."
Admittedly, the circumstances in Garland were somewhat more extreme than those presented here in that the interrogation there took place over a longer period of time. On the other hand, both of the juveniles involved in the Garland and White cases were 15 years of age whereas the child here is only 14 years of age and thus under the specific provisions of the statute entitled to even greater protection than that afforded to older juveniles.
The state contends however that the sub station in which the child was detained and interrogated here does not fall within the purview of the statute because the sub station in question consisted of a portion of a privately owned commercial building which was not equipped with a cell, bars or other visible evidence of confinement, and which was used primarily for administrative purposes.
We find no merit in this contention. The statute says "any police station, prison or jail." The building was certainly used as a police station, and it contained what was referred to by the officers as an "interrogation room." The fact that it was not also a prison or jail is of no consequence in view of the wording of the statute. The statute plainly prohibits confinement of juveniles under the age of 15 years in "any police station" regardless of whether the police station is also utilized as a prison or jail.
In conclusion we hold that a confession obtained from a child under the age of 15 years at 2:00 a. m. in the morning, after he has been detained and transported in association with adult offenders in violation of LSA-R.S. 13:1577, and has been confined and interrogated in a police station in further violation of the statute, all over a period of some three hours in the middle of the night, and who has not during this period of time had the benefit of the counsel of parent, friend, attorney, judge, juvenile probation officer or anyone else, is not admissible in evidence under our prior decisions in the cases of In Re Garland and In Re White, 160 So.2d 340 and 160 So.2d 344 (1964).
Absent the confession there is insufficient evidence of the child's participation in the burglary. Even in the confession he maintained that he never entered the service station but at all times remained seated in the automobile and that his participation, if it can be called that, was limited to acquiescence in the undertaking in which he took no active part. In his testimony at the hearing he contended that he had simply been offered a ride home from the bus stop where he was waiting by several adults who lived near his home; that he had no knowledge of any intent to commit a crime; and that upon being advised of their intention to break into the station he requested that he be let out of the automobile, which request was denied on the basis of the lateness of the hour and the distance from his home.
The essential elements of the crime of simple burglary insofar as here relevant are unauthorized entry with intent to commit a theft. LSA-R.S. 14:62. Apart from the mere fact of the child's presence in the automobile utilized by the adult offenders, none of whom testified, there is no proof of either unauthorized entry or intent to steal on the part of the juvenile.
Accordingly, the judgment appealed from is reversed and set aside, and it is now ordered, adjudged and decreed that the juvenile, Nathan Wesley, be and he is hereby discharged from the jurisdiction of *312 the Juvenile Court for the Parish of St. Charles on the charge of simple burglary of LeBlanc's Conoco Station.
Reversed and rendered.