363 So.2d 1325 (1978)
In the Interest of Frankie Jo Angel LaROCCA.
No. 9470.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1978.
*1326 Occhipinti, Grace, Berger & Dunford, Christopher T. Grace, Jr., New Orleans, for defendant-appellant, Frankie Jo Angel LaRocca.
Before GULOTTA, STOULIG and GARRISON, JJ.
GARRISON, Judge.
Frankie Jo Angel LaRocca was adjudicated a juvenile delinquent in proceedings in the Juvenile Court for the Parish of Jefferson on November 2, 1977. This judgment was based on a finding that Frankie Jo Angel LaRocca was guilty of simple criminal damage to property in violation of R.S. 14:56. She was placed on active probation for an indefinite period, and she has appealed.
Frankie was a thirteen-year-old white female in November 1976, when she was charged with writing obscenities on the bathroom walls at Mount Carmel Academy, where she was a student in the ninth grade. During November 1976, a series of detailed accounts of a sexual relationship between a male teacher at the school and the author began to appear on the bathroom walls of Mount Carmel. The police were contacted by Sister Mary Grace, Principal of Mount Carmel Academy, and were requested to investigate the matter.
The first writings, dated "11-5-75," were discovered on November 8, 1976, and more were discovered on the 9th. Two detectives from the Juvenile Division, Detectives Johnston and Jackson, went to Mount Carmel on the morning of November 12th, to view the writings and to begin the investigation. Some of the writings had already been removed from the walls by the cleaning crew, but color Polaroid pictures had been taken of all the walls before cleaning, and these photographs were made available to the police. After examining these writings, the conclusion of the police was that all the writing appeared to be by the same author, even though it was a combination of block printing and script.
A list of possible suspects was drawn up from names supplied by various students and teachers, but no conclusions about the author could be drawn by the officers by a comparison with writing samples. The teacher who was the subject of most of these writings was unable to come up with the names of any students who might have a grudge against him, or otherwise want to make him look bad.
*1327 No new writings appeared until the morning of November 19th, on the walls of the first-floor restroom. Photographs were taken, and although more students were questioned, no new information was obtained as to the authorship. On the same day, various writings were discovered on the outside walls of the gym and on a statue outside the school, but these were found to have no relationship to the bathroom writings.
Later on the same day more new writings appeared between 1:10 p. m. and 2:15 p. m. in the third-floor bathroom. After coming out to Mount Carmel again to observe these new writings, the detectives asked Sister Mary Grace to get handwriting samples from the prime suspects, and they would get a handwriting expert to examine the writings on November 22nd. Detective Molligan, an expert in handwriting analysis, along with several other detectives, went to Mount Carmel on the 22nd to attempt identification. When Detective Molligan saw Frankie LaRocca's handwriting on her school enrollment application, he noted the similarity to the writings in the bathrooms and asked for additional examples of Frankie's handwriting.
Sister Mary Grace contacted Mrs. LaRocca and, after being advised as to what was going on, Frankie's mother agreed to accompany Frankie to Mount Carmel for questioning. When they arrived at Mount Carmel, the police report that Frankie was advised of her rights by Detective Molligan, and they received permission from her and from her mother prior to questioning. Frankie testified that she remembers hearing them tell her and her mother about having an attorney, but she thought that was mentioned after the questioning and was in reference to an attorney for a court appearance. She did not remember being told of her right to remain silent. Mrs. LaRocca testified that she did not remember being advised of any rights, but that she did consent to Frankie's being questioned alone. She gave her permission for the handwriting analysis, but said the police told her they were convinced that Frankie was responsible for these writings and led her to believe that if things were settled they wouldn't have to go to court.
Frankie was first questioned in the presence of her mother and Sister Mary Grace, but when this questioning led nowhere, the officers felt that Frankie might speak more freely outside the presence of her mother and the nun, and questioned her alone. Finally, in the presence of Detectives Molligan and Johnston, Frankie orally admitted to having written the obscenities on the bathroom walls. According to the police, she withdrew her admission after she found out that her mother would be informed of the exact contents of the writings, and said that she had confessed only because she was afraid. However, Frankie testified that she confessed only because the officer kept telling her that he was an expert, that he knew she had done it, and that if she would admit it, it would all be over and she would not have to go to court. She said that they kept after her, she got tired, so she finally screamed that she had done it to make them stop.
Frankie never made a written confession, and she denied her oral confession shortly after having made it. She did, however, consent to giving a handwriting sample to the police. After examination and comparison of the samples with the wall writings, Detective Molligan decided that Frankie was the author of the writings based on significant similarities without unexplainable differences.
It was upon this evidence (the oral confession and the handwriting analysis opinion), essentially, that the judge adjudicated Frankie a delinquent. However, there are serious problems with accepting any of this evidence. A juvenile is entitled to the protection of the due process clause of the 14th Amendment to the United States Constitution, and to all the attendant safeguards guaranteed to anyone accused of a crime. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Likewise, the burden of proving the charges against a juvenile is no less than against an adult:

*1328 "[All elements of the offense] which would be criminal if he were an adult, must be based on admissible evidence constituting proof beyond a reasonable doubt. LSA-R.S. 13:1579.1; In re State in Interest of Taylor, 255 So.2d 361 (La. App. 1 Cir. 1971); State in Interest of Ogletree, 244 So.2d 288 (La.App. 4 Cir. 1971); State in Interest of Simon, 295 So.2d 473 (La.App. 3 Cir. 1974)." State in Interest of Simmons, 299 So.2d 906, 908 (La.App. 3rd Cir. 1974).
See also, In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State in Interest of Hampton, 257 So.2d 459 (La. App. 1st Cir. 1972).
It appears that the proof offered in support of the guilt of Frankie Jo Angel LaRocca does not meet the above-stated requirements of the law.
Considering the oral confession of Frankie, there appear to be sufficient facts surrounding the circumstances under which it was obtained to render its admissibility doubtful. It was obtained from a thirteen-year-old girl, outside the presence of her mother, and both before and after this private interrogation she denied the truth of it. According to her testimony, she was harassed into admitting guilt, which makes the voluntariness of the confession more questionable.
As a general rule, a juvenile's confession, outside the presence of his parents, friends, or an attorney, is to be carefully scrutinized for any signs of coercion. See State in Interest of Campbell, 344 So.2d 711 (La.App. 2nd Cir. 1977); State in Interest of Wesley, 285 So.2d 308 (La.App. 4th Cir. 1973); In re Garland, 160 So.2d 340 (La. App. 4th Cir. 1964); In re White, 160 So.2d 344 (La.App. 4th Cir. 1964). Although the circumstances in this instance were not as extreme as in most of the cases cited, it is not at all clear that Frankie, or her mother, fully understood her rights, or that her statement was not given in response to threats, harassment, coercion, or promises that this would be the end of the matter.
Without Frankie's confession, all that is left of the evidence is the handwriting analysis. Attorney for the defendant attempted to have all evidence pertaining to the handwriting analysis suppressed because of defendant's denial of compulsory process. The State failed to bring forth any other tangible evidence of the commission of the crime. State in Interest of Emerson, 250 So.2d 439 (La.App. 4th Cir. 1971). Understandably, the bathroom walls at Mount Carmel were cleaned off soon after the writings had been examined by the police; however, photographs admittedly were taken and used, in part, by Detective Molligan in his analysis. These photographs mysteriously disappeared while in the custody of the District Attorney's office, so that defendant was unable to inspect them or have her own expert conduct a handwriting analysis. Clearly defendant would have been entitled to this had the photographs been available.
Consequently, having been denied this right, defendant's counsel sought to exclude all reference to Molligan's handwriting analysis report. This was denied, and although defendant further attempted to have Molligan's testimony excluded on these grounds, this issue became moot when Molligan failed to appear to testify at the trial. This, however, further prejudiced defendant's case because Molligan's report was made part of the record, and was undoubtedly considered by the judge (despite his remarks that all this would be weighed in his judgment), and yet defendant had no opportunity to cross-examine Molligan to challenge his expert opinion.
Further, the police report filed by Detectives Johnston and Jackson was filed into the record as the basis for the complaint. This report is full of hearsay and opinions, which both are inadmissible evidence. In addition, both officers testified at trial to essentially the same effect, over the objections of defendant's counsel. Without any indication otherwise, it must be assumed that these things were considered by the judge, in spite of any efforts he may have made not to do so. See State in Interest of Simmons, supra.
*1329 The fundamentals of fairness and due process which are required to be accorded to adults were not accorded to this juvenile. Furthermore, the State failed to sustain its burden of proof with regard to the evidence presented.
For these reasons, the adjudication of Frankie Jo Angel LaRocca as a delinquent is reversed.
REVERSED.
STOULIG, J., concurs with written reasons.
STOULIG, Judge, concurring.
I concur.
The petition to declare Frankie Jo Angel LaRocca a juvenile delinquent is based upon the commission of the offense of simple criminal damage to property (R.S. 14:56).
The adjudgment of delinquency was based upon evidence insufficient to meet the standard of proof required to establish all of the statutory elements of the offense and to prove beyond a reasonable doubt that the juvenile had in fact committed it.
It is now well established that due process mandates a juvenile be accorded the same constitutional safeguards, including the degree of proof, as that afforded adults. The disputed inculpatory oral statement of the juvenile, uncorroborated by other admissible evidence, lacks the certainty necessary to establish beyond a reasonable doubt that this minor did in fact commit a simple criminal damage to property.
While the evidence strongly indicates that Frankie Jo Angel LaRocca in all probability was the author of the obscene writings, nonetheless the State failed to bear the burden of proof necessary to establish this fact beyond a reasonable doubt.