405 So.2d 1194 (1981)
STATE of Louisiana In the Interest of Christopher (Chris B.) AARON.
No. 14327.
Court of Appeal of Louisiana, First Circuit.
October 12, 1981.
*1195 Kathleen Stewart Richey, Asst. Public Defender, Baton Rouge, for plaintiff-appellant Christopher B. Aaron.
Kay Howell, Asst. Dist. Atty., Baton Rouge, for defendant-appellee State of Louisiana.
Before COVINGTON, COLE and WATKINS, JJ.
COVINGTON, Judge.
This is an appeal from a juvenile proceeding in which Christopher (Chris B.) Aaron, domiciled in East Baton Rouge Parish, was adjudicated a delinquent pursuant to LSA-R.S. 13:1570 A(5).
The petition alleged in three counts that Chris Benedict Aaron, age 15, was delinquent in that on June 26, 1980,

"1.
"said juvenile violated La.R.S. 14:64, in that he robbed a 7-11 Store of $67.00 while armed with a dangerous weapon, to wit: a .38 caliber revolver. Said offense occurred at 2424 O'Neal Lane, Baton Rouge, Louisiana;

"2.
"further, on or about June 26, 1980, said juvenile violated La.R.S. 14:30, in that he attempted the murder of Sgt. Barney McClain of Troup L by firing a double barrel Savage twelve (12) gauge shotgun at said law enforcement officer. Said offense occurred while officers pursued said juvenile east of [on] highway 190 and east towards Mandeville, Louisiana.

*1196 "3.
"further, on or about June 26, 1980, said juvenile violated La.R.S. 14:30, in that he attempted the murder of deputy John Dillon by firing a double barrel Savage twelve (12) gauge shotgun at said law enforcement officer. Said offense occurred while officers pursued said juvenile east on highway 190 and east towards Mandeville, Louisiana."
The trial court found the juvenile guilty on all counts. He was adjudicated delinquent on October 8, 1980, and at the dispositional hearing on November 21, 1980, he was committed to the custody of the Louisiana Department of Corrections for an indefinite term not to exceed his twenty-first birthday.
On appeal, Aaron urges the following Specifications of Error:
"1. The state failed to prove beyond a reasonable doubt that the appellant had specific intent as to the two counts of attempted murder and the trial court erred in denying the defense motion for a directed verdict of acquittal as to these counts.
"2. There was a complete lack of evidence to the proper venue as concerning the two counts of attempted murder and the trial court erred in denying the defense motion for a directed verdict."
The appellant first contends that the State failed to produce evidence of guilt beyond a reasonable doubt of every element of the offenses charged in the juvenile delinquency proceeding; consequently, a directed verdict of acquittal was mandated.
The appellant contends that the reasonable doubt standard of review enunciated in Jackson v. Virginia, infra, must be used in the present case. The United States Supreme Court stated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that in federal habeas corpus cases the standard of review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. This State has now adopted the Jackson standard of review when evaluating allegations by defendants that the prosecution presented insufficient evidence to prove an essential element of the crime charged beyond a reasonable doubt. State v. Abercrombie, 375 So.2d 1170 (La.1979), cert. den. 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980); State v. Roy, 395 So.2d 664 (La.1981). The burden of proving the charge of delinquency against a juvenile and the standard of review of the sufficiency of the evidence must meet the Jackson standard. See State in Interest of Franklin, 399 So.2d 671 (La.App. 1 Cir. 1981), No. 14,146; In the Interest of LaRocca, 363 So.2d 1325 (La.App. 4 Cir. 1978).
On June 26, 1980, Joseph Jinks, the defendant's accomplice, entered the 7-11 convenience store on O'Neal Lane in Baton Rouge, Louisiana, at approximately 1:45 a. m. The only employee in the store, Charles Grimm, a night clerk and cashier, saw Jinks exit from the driver's side of a yellow step van bearing a license plate with the words "Ocean Springs" on it, which was backed up to the front door of the store. Jinks came into the store with a clipboard and told Grimm he had a delivery to make. Grimm told Jinks where the stockroom was, and Jinks walked to the stockroom. Jinks stayed in the store for a few minutes and then exited the store, walking back to the driver's side of the van. He then came back into the store and bought a Coke.
After a few minutes, the defendant exited the passenger's side of the van and entered the front door of the store. The defendant walked back to the stockroom and then returned to the front of the store, standing across the counter about four feet from Grimm. The defendant pointed a hand gun at Grimm, who was ordered to get back from the cash register. Jinks then jumped over the counter, opened the cash register, and took the cash (which included an identifiable bill used as "bait money.")
Jinks then took the store keys and locked the front door; however, he failed to completely *1197 engage the locking mechanism. At this point, a car drove into the parking lot. A customer got out and walked to the front door of the store. Jinks and the defendant instructed Grimm to tell the customer the store was closed, and they moved to the rear of the store.
Grimm opened the door and told the customer to run, that a robbery was in progress. Both Grimm and the customer ran from the store. Grimm jumped into the customer's automobile, which had the key in the ignition, and left the premises, driving a safe distance away. The customer ran to a nearby house. Jinks and the defendant than ran from the store, jumped in the van and drove down O'Neal Lane toward the interstate highway.
Grimm followed the van down O'Neal Lane and was able to get close enough to read the license plate of the van. He then followed it for about one-half mile until a gunshot was fired at him from the van. Grimm then put on his brakes and saw the van go on the ramp to the interstate highway (I-12) heading toward Hammond, Louisiana. Grimm returned to the store, picked up the customer, wrote down the license number of the van, and went to another 7-11 store where he reported the crime to the police.
John Dillon, a deputy sheriff of St. Tammany Parish, heard the radio broadcast giving the license number and description of the van involved in the armed robbery. At approximately 3:15 a. m. on June 26, 1980, while he was on patrol, Deputy Dillon observed a van on U.S. Highway 190 which met the broadcast description.
Deputy Dillon signalled for the van to pull over. Rather than obeying the officer's signal, defendants speeded up. The deputy then chased the fleeing vehicle, attaining speeds up to 90 m. p. h. over a distance of 12 miles.
Sergeant Barney McClain of the Louisiana State Police was patrolling in the vicinity of Louisiana Highway 21 and U.S. Highway 190 when he saw the police unit pursuing the van. The van met the broadcast description of the vehicle involved in the armed robbery. Deputy McClain turned on his signal lights and joined in pursuit.
Deputy Dillon and Sergeant McClain followed the van, with Dillon driving his unit in the left lane and McClain driving his unit in the right lane, in close proximity to the van. The van drove in the center of the two lanes trying to prevent the police units from passing. Deputy Dillon attempted to pass the van on the left four or five times, but each time it would cut to the left and ram the deputy's unit, attempting to force the unit off the road. McClain then tried to pass the van at the same time as Dillon, and the van swerved in their paths attempting to prevent either unit from passing. McClain also tried to catch the van's bumper with the push bumpers on his unit, without success.
When the vehicles were approximately two and one-half miles west of Covington, two shotgun blasts (from a double-barrel, 12-gauge shotgun) were fired from the rear of the van at the officers, who were then driving side by side about 50 feet behind the van. One of the blasts went through Dillon's windshield at a point about four inches above his head. The deputy returned the fire.
As Dillon made one last attempt to pass the van, it turned to the left and struck Dillon's unit in the center of the right side, causing both the police unit and the van to wreck. Deputy Dillon's unit had to be pried apart in order to extract the unconscious officer from the unit.
Following the accident, Officers Sanders, Windham and Bullock arrived at the scene. Jinks exited the van first through the rear door. Officer Windham testified that he shined his spotlight into the van and saw Aaron sitting in the passenger's seat with a shotgun held in his hands in an upright position at an angle of forty-five degrees from his chest. Sgt. McClain ordered the defendant to exit the van, but the defendant refused to do so until Jinks yelled to him. The defendant then got out on the passenger's side of the van, and was immediately apprehended.
*1198 Officer Bullock recovered the double-barrel shotgun, containing two spent shells, from the floor between the driver's seat and the passenger's seat. He also recovered $67.00 in cash; one of the bills was the one bearing the identifiable serial number taken in the armed robbery at the 7-11 convenience store.
As stated above, the appellant contends that the trial court erred in denying his motion for acquittal of the two counts of attempted murder, asserting that the State introduced no evidence of specific intent, or in the alternative, that the evidence of specific intent was insufficient to sustain the verdict.
Although intent is a question of fact, it need not be proven as a fact, and may be inferred from the circumstances surrounding the commission of the crime. Consequently, the State may rely on circumstantial evidence to prove this element of a crime. LSA-R.S. 15:445; State v. Custard, 384 So.2d 428 (La.1980); State v. Anderson, 343 So.2d 135 (La.1976); State In Interest of Jordan, 348 So.2d 697 (La.App. 1 Cir. 1977). A specific intent to kill may be reasonably inferred from the defendant's intentional use of a deadly weapon in the firing of a shot aimed at the intended victim, along with the other circumstances of the case. State v. Lee, 275 So.2d 757 (La. 1973); State In Interest of Jordan, supra.
At the close of the adjudication hearing, the trial judge remarked:
"The clerk at the store without equivocation and hesitation, identified Chris Aaron, as the gentleman who pointed a loaded, 38 revolver, during the time of the attempted or during the time of the armed robbery. There is no question in the Court's mind that Chris Aaron participated in the armed robbery of Mr. Grimm on June 26th, 1980. As to the attempted murder of the law enforcement officers, the evidence establishes in this Court's mind, beyond any reasonable doubt, that during the high speed chase, Chris Aaron took this 12 gauge, double barrel shotgun and fired twice through the back of that truck, while it was being chased by two clearly marked police vehicles, with flashing red-lights, one of which was employing the use of his siren. This Court is convinced beyond any reasonable doubt that Chris Aaron had the intent to either, kill or inflict great bodily harm upon the officers in those vehicles. The Court is not impressed by the fact that he fired through a closed door. The Court finds and believes that he knew exactly what he was doing because he was accurate, and his accuracy belies any argument that he did not have a specific intent to do exactly what he did. This and all of the evidence in the case indicates that an armed robbery and an attempted murder two counts of attempted murder were committed. An armed robbery is a theft of something of value from a person or which is in the immediate control of that person by the use of force or intimidation while armed with a dangerous weapon. There was a theft. Money was taken that did not belong to Chris Aaron. It was taken without the consent of the owner. Under the circumstances, the evidence shows an intent to permanently deprive that person of that money. It was taken from his immediate control by the use of force, that is the pointing of a loaded 38 caliber revolver and that loaded 38 caliber revolver is a dangerous weapon. It is an inherently dangerous instrument and in the manner in which it was used, it was calculated to or likely to produce, death or great bodily harm. The Court believes that had not Mr. Grimm complied with the orders to step back away from the register, Mr. Grimm may not have been here to testify today. That is based on the fact that the Court finds there was an attempt to either kill or seriously injure these law officers. Attempted murder requires a specific intent to kill or inflict great bodily harm and in this case, Article 14, Section 2 should apply, that is upon a peace officer engaged in the performance of his lawful duties or Section three may apply, if specific intent to kill or inflict great bodily harm made upon more than one person.

*1199 Specific intent is that state of mind which exists when circumstances indicate that the defendant or the accused, actively desired to prescribe criminal consequences to follow his act. And an attempt is an act, is done when one does an act for the purpose of and tending directly toward the accomplishment or the object of the act. These were clearly peace officers, engaged in the performance of their lawful duties. There were two peace officers behind that van. Two shots were fired with a shotgun. From the circumstances, the Court finds that Chris Aaron had an active desire to either kill or inflict great bodily harm upon both officers. He had to know there were two, there were two vehicles. He did an acthe fired the shotgun through the rear of that van twice. There is no doubt whatsoever, in this Court's mind, that Chris Aaron is delinquent for violation of Louisiana Revised Statute 14:64armed robbery. Revised Statute 14:30, the attempted murder of Sgt. Barney McClain and Revised Statute 14:30, the attempted murder of Deputy John Dillon and the Court adjudicates him to be so. The Court orders that a pre-disposition investigation and disposition report and a disposition hearing. He is remanded to detention to await the disposition hearing."
The facts of this case show that Aaron was an active participant in the armed robbery in which he held a loaded revolver aimed at Charles Grimm, the store clerk. From the manner in which the gun was held pointed at him, the victim testified that he had no doubt in his mind that the defendant would have used it, and he was put in fear of his life. As Grimm was chasing the van after the robbery, a shot was fired at him from the van. During the high-speed chase which ensued, the defendant and his accomplice knew that there were two officers in separate units in close pursuit. The van drove down the center of the two lanes in a deliberate attempt to prevent either unit from passing. The van also was maneuvered from right to left to prevent the two units from passing or stopping the subjects. The occupants of the van knew that one officer was on their left, since they rammed his police unit each time he (Dillon) attempted to pass the van. They also knew that the other officer (McClain) was on the right since he tried to catch their bumper a number of times. The shotgun blasts were fired through the van rear door, directly at the pursuing officers when the occupants knew that the officers were close enough and in a position to be killed. In fact, one of the blasts missed Deputy Dillon's head by only four inches.
The actions of the subjects in trying to force Deputy Dillon's unit from the road while he was traveling at speeds up to 90 m. p. h. also indicates that they were willing to kill the officers to avoid capture. They did, in fact, cause Dillon's unit to crash, injuring him so badly that he was taken, unconscious, to the hospital.
The facts of this case further show that the appellant was the person who shot at the officers. Following the wreck, Jinks, the driver, exited from the rear of the van. Sgt. Windham testified that Aaron was crouched in the passenger's seat holding the shotgun in a "ready" position.
In State v. Carvin, 308 So.2d 757 (La. 1975), our Supreme Court held that there was sufficient evidence from which the jury could reasonably infer that the defendant had fired a gun at the victim where there was some evidence that the defendant was actually driving a car matching the description of the vehicle involved in the incident despite no evidence actually placing the defendant at the scene of the shooting.
Our review of the record convinces us that, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Aaron fired the shots at Officers Dillon and McClain in an attempt to murder both officers. Under the facts of this case, as presented in the trial court, the State proved beyond a reasonable doubt that Aaron was guilty of attempted first degree murder of the police officers. There is no merit in the appellant's first specification of error.
*1200 Next, the appellant argues that the State has failed to prove venue as to the two counts of attempted murder. The appellant was tried as a juvenile delinquent. He was domiciled within East Baton Rouge Parish, Louisiana, where he was accused of violating a state law. Under LSA-R.S. 13:1570 A(5), which implements La.Const. 1974, Art. 5, § 18, the East Baton Rouge Parish Family Court was a proper forum in which to hold this delinquency proceeding. Moreover, the venue article of the Code of Juvenile Procedure specifically provides that a proceeding in which a child is alleged to be delinquent may be commenced in the parish in which the child is domiciled. See LSA-C.J.P. art. 18. Juvenile delinquency proceedings do not fall within the category of criminal prosecutions. See State in Interest of Batiste, 367 So.2d 784 (La. 1979). There is no constitutional requirement that all procedures of a criminal trial be imposed in a juvenile delinquency proceeding. McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); State In Interest of Dino, 359 So.2d 586 (La.1978). Venue at the place of the commission of the crime which forms the basis of the criminal proceeding is not among the essentials of due process and fair treatment accorded or required during juvenile delinquency proceedings. In any event, the appellant was found guilty of committing armed robbery in the Parish of East Baton Rouge. The commission of this crime clearly makes venue in East Baton Rouge proper. There is no merit in this specification of error.
Accordingly, the judgment of the Family Court is affirmed.
AFFIRMED.